IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NAPOLEON T. ANNAN-YARTEY, ) | CV. NO. 06-00166 DAE-BMK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| HONOLULU POLICE ) | |
| DEPARTMENT, OFFICER PIGRRE ) | |
| SHAWN, CHIEF OF POLICE ) | |
| BOISSE P. CORREA, CITY AND ) | |
| COUNTY OF HONOLULU, ) | |
| MUNICIPAL CORPORATION, ) | |
| SAFEGUARD SECURITY ) | |
| OFFICERS, CADES AND ) | |
| SCHUTTE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
CITY AND COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT,
CHIEF OF POLICE BOISSE P. CORREA AND OFFICER SHAWN PIERRE'S
MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANTS
CADES SCHUTTE LLP AND ERNEST H. NOMURA'S MOTION FOR
SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants City and County of

Honolulu, Honolulu Police Department, Chief of Police Boisse P. Correa ("City

Defendants"), and Officer Shawn Pierre's ("Officer Pierre") Motion for Summary

Judgment and Defendants Cades Schutte LLP ("Cades") and Ernest H. Nomura's

("Nomura") Motion for Summary Judgment and the supporting and opposing

memoranda, the Court GRANTS IN PART AND DENIES IN PART City

Defendants and Officer Pierre's Motion for Summary Judgment.  Specifically, the

Court GRANTS City Defendants' motion for summary judgment as to Counts 1, 2,

3, 4, 6, 7, 8, 9, 10, and 12; GRANTS Pierre's motion for summary judgment as to

all counts; and DENIES City Defendants' motion for summary judgment as to

Count 5 for improper training and supervision concerning the strip search, Count

11 for battery concerning the strip search, and Count 13 for IIED in relation to the

strip search.  The Court GRANTS Cades and Nomura's Motion for Summary

Judgment on Counts 6, 12, and 13.

BACKGROUND

        On June 15, 2004, Plaintiff Napoleon T. Annan-Yartey was arrested

for Criminal Trespass in the second degree at the Cades Schutte building.

Arresting Officer Pierre (misidentified as "Pigrre Shawn" in the Complaint) arrived

at the scene after receiving a call from dispatch about a previously trespassed

individual that was present at the location.  Upon arrival, Officer Pierre observed

the building security guards, Safeguard Security ("Safeguard"), arguing with

Plaintiff and insisting that he leave the premises.  Despite Safeguard's

-2-

documentation of the earlier trespass, Officer Pierre allowed Plaintiff to remain in the lobby for the express purpose of serving legal papers to Nomura, an attorney at Cades.

When Plaintiff again began to argue with the security guards after serving the documents, Officer Pierre states that he warned Plaintiff multiple times to leave the property or he would be arrested. Due to Plaintiff's alleged noncompliance, Officer Pierre then informed Plaintiff that he was under arrest and he grabbed his arm to stand him up. Although Plaintiff began to resist arrest, Officer Pierre claims that he warned him that more force would be used if he did not cooperate. Plaintiff thereafter became compliant. Officer Pierre states that he noticed a cut on Plaintiff's finger while patting him down, so he brought him to Queen's Hospital to have the finger examined. Hospital records indicate that Plaintiff suffered a crushed middle finger and back pain. The source of those injuries is unknown.

By contrast, Plaintiff alleges in his affidavit that he received no warnings before the arrest and that Officer Pierre grabbed him with force, slammed him to the ground, kicked him in the stomach, and manhandled him during the arrest. As to the injured finger, Plaintiff attests that Officer Pierre slammed his middle finger in the car door during the arrest, thus causing the cut, rather than

having the cut already.  After being treated at Queen's Hospital for the finger injury and back pain, Plaintiff alleges that Officer Pierre brought him to the police station where another officer performed a strip search, took his fingerprints, and placed him in jail for more than thirty hours.

On March 22, 2006, Plaintiff filed his Complaint, and he filed his Complaint for Damages one day later on March 23, 2006.  Named defendants include: the City and County of Honolulu, the Honolulu Police Department ("HPD"), Chief of Police Boisse P. Correa ("Chief Correa"), Officer Pierre, Safeguard, Cades, and Nomura.

The Complaint contains thirteen Counts: (1) 1983 – Arrest, (2) 1983 – Detention and Confinement, (3) 1983 – Strip Search, (4) 1983 – Conspiracy, (5) 1983 – Refusing or Neglecting to Prevent, (6) Malicious Prosecution, (7) Malicious Abuse of Process, (8) Violation of the Hawaii Civil Rights Act, (9) False Arrest Imprisonment, (10) Assault, (11) Battery, (12) Conspiracy, (13) Intentional Infliction of Emotional Distress.  Counts 1-5 are raised under 42 U.S.C. § 1983.

On July 3, 2006, Cades and Nomura filed a Motion to Dismiss for Failure to State a Claim, and, on July 11, 2006, Safeguard filed a motion to join the Motion to Dismiss.  The Court granted Defendants Cades and Safeguard's Motion to Dismiss with regard to the § 1983 claims in Counts 1 through 5 and the Hawaii

Civil Rights Act in Count 8, but denied the Motion with regard to the malicious prosecution claim in Count 6, the civil conspiracy claim in Count 12, and the intentional infliction of emotional distress claim in Count 13.  On June 19, 2007, the Court granted Defendant Safeguard's Motion for Summary Judgment, filed May 7, 2007, on the remaining counts against Safeguard, that is, Counts 6, 12, and 13.

On February 28, 2007, City Defendants and Officer Pierre filed a Motion for Summary Judgment.  That same day, Cades and Nomura filed a separate Motion for Summary Judgment on the remaining counts against them, that is, Counts 6, 12, and 13.   On April 6, 2007, Plaintiff filed an Opposition to City Defendants and Officer Pierre's Motion for Summary Judgment, but not to Cades and Nomura's Motion for Summary Judgment.   On April 20, 2007, City Defendants and Officer Pierre filed a reply.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891

(9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

A main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–-usually,

but not always, the defendant–-has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial"and  may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.   City Defendants and Officer Pierre's Motion for Summary Judgment

     A.   Counts 1-5: § 1983 Claims

     Plaintiff alleges that Defendants and their employee, Officer Pierre, deprived him of his constitutional rights under 42 U.S.C. § 1983 ("Section 1983"). To state a claim under Section 1983, a plaintiff must establish a deprivation of a right secured by the Constitution or laws of the United States and that the defendant's action occurred under color of state law.  See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

     A plaintiff may establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority"[1] committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."[2]  Gillette v. Delmore, 979 F.2d 1342, 1346-

---

[1]   "Whether a particular official has final policy-making authority is a question of state law."  Gillette, 979 F.2d at 1346.

[2]   Because "the HPD is a department placed under the supervision of the managing director of the City and County of Honolulu (City)," and it is not an "independent legal entity," the Court shall treat all claims against HPD and Chief

47 (9th Cir. 1992); see Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970). A plaintiff may not assert a claim under Section 1983 merely by identifying conduct properly attributable to the municipality. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

      "To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that 'the official, acting under color of state law, caused the deprivation of a federal right.'" Spoklie v. Montana, 411 F.3d

_____

Officer Correa (named as a party only through his employment with HPD) as claims against the City. Meyer v. City and County of Honolulu, 729 P.2d 388, 390 n.1 (Haw. Ct. App. 1986), rev'd in part on other grounds, 731 P.2d 149 (Haw. 1986).

1051, 1060 (9th Cir. 2005) (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)).  So

long as the official's "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," he or she

has qualified immunity from civil liability under Section 1983.  <u>Id.</u>  The following

must be determined for the qualified immunity defense to apply: "(1) what right

has been violated; (2) whether that right was so 'clearly established' at the time of

the incident that a reasonable officer would have been aware of its

constitutionality; and (3) whether a reasonable public officer could have believed

that the alleged conduct was lawful."  <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078,

1085 (9th Cir. 1998).

### 1.   <u>Counts 1, 2–Arrest and Detention and Confinement</u>

As to Counts 1 and 2 with respect to City Defendants, Plaintiff has

failed to allege any facts that could prove municipal liability.  <u>See</u> <u>Monell</u>, 436

U.S. at 690-91.  Plaintiff made no allegations of fact to demonstrate that HPD had

a formal policy or custom in place pursuant to which Chief Correa or another

official may have acted.  The Court, therefore, GRANTS summary judgment for

City Defendants on Counts 1 and 2.

As to Count 1 with respect to Officer Pierre, Plaintiff claims excessive

use of force in the course of making the arrest under the Fourth Amendment,

-10-

among other constitutional amendments.  See Graham v. Connor, 490 U.S. 386, 396 (1989) (noting that, generally, excessive use of force claims will be made under the Fourth Amendment's prohibition against unreasonable seizures).  The Court analyzes Plaintiff's claim under the Fourth Amendment only because that is the only valid constitutional source upon which Plaintiff relies in relation to excessive force in the context of arrests.  Plaintiff claims that he was not given warning of his arrest, Officer Pierre grabbed him with force, slammed him to the ground, kicked him in the stomach, and manhandled him during the arrest.  Officer Pierre denies that anything of the sort occurred, claiming instead that he warned Plaintiff on multiple occasions to leave the property and that when Plaintiff did not heed the warnings, Officer Pierre told him that he was under arrest.  The only force that Officer Pierre claims he used was when he grabbed Plaintiff's arm to stand him up.  When Plaintiff began to resist arrest, Officer Pierre asserts that he then warned Plaintiff  that he would use more force if necessary, but Officer Pierre apparently did not have to because Plaintiff became compliant.

Those competing stories create disputed issues of fact (though not necessarily material) concerning the objective reasonableness of Officer Pierre's arrest, i.e., whether a reasonable officer could have believed that Officer Pierre's conduct, under the circumstances, was lawful.  Officer Pierre acted on the belief

that Plaintiff was an unlawful trespasser, but that belief, without more, may not justify use force of force such as slamming a trespasser to the ground, kicking him in the stomach, and manhandling him during an arrest, assuming for now that those facts are true.  See Graham, 490 U.S. at 396.  Still, "[t]he test is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Gregory v. County of Maui, 414 F. Supp. 2d 965, 968 (D. Haw. 2006).  The Court must judge the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396. "In other words, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Kanae v. Hodson, 294 F. Supp. 2d 1179, 1184 (D. Haw. 2003).  The test is an objective one. See Gregory, 414 F. Supp. 2d at 968.

City Defendants and Officer Pierre point to the out-of-district cases, Flanigan v. Town of Colchester, 171 F. Supp. 2d 361 (D. Vt. 2001) and Durruthy v. Pastor, 351 F.3d 1080, 1085 (11th Cir. 2003), for their factually similar nature to support the proposition that takedown techniques are not constitutionally prohibited, provided that they are not unconstitutionally excessive.  In Flanigan, although there was some dispute concerning the extent of the injuries suffered,

-12-

there was no dispute that an officer knocked the plaintiff's feet out from under him, grabbed him around the chest, and forced him to the ground.  See 171 F. Supp. 2d at 365-66.  The district court focused on the "rapidly changing situation" and the plaintiff's incapacitation, concluding that "the cuts, scrapes, and muscle aches [the plaintiff] allegedly suffered [were] not so severe as to suggest the use of excessive force.  While the fractured right orbit bone [was] more serious, it [was] not a surprising result of a reasonable police response to [the plaintiff's] conduct."  Id. at 365-66.  In Durruthy, an officer grabbed the plaintiff from behind (the plaintiff being a cameraman filming an arrest on the street), pulled him to the ground, and pinned his arms behind him while "kneeing" him in the back, even though the plaintiff stated, "[s]ir, my arm ... please sir ... I am going peacefully, sir."  See 351 F.3d at 1085.  The Eleventh Circuit found that the amount of force used was de minimus, determining that "even if the force applied by [the officer] in effecting the arrest-forcing [the plaintiff] down to the ground and placing him in handcuffs-was unnecessary, plainly it was not unlawful."  Id. at 1094.

        Here, there is no dispute that Plaintiff was on the property as a trespasser, as Plaintiff previously had received a trespass warning.  Additionally, there is no dispute that some confrontation ensued in the resulting arrest and that some force was used.  Moreover, the medical records do not reflect that Plaintiff

-13-

sustained a "kick" to his stomach or any other injuries that might suggest excessive force. The only reported injury was the injury to Plaintiff's finger (which Officer Pierre may or may not have caused) and back "pain." Although there is dispute surrounding the warnings given to Plaintiff, if any, and the amount of force used, the Court does not find that they are material because, even if Plaintiff had not received warnings and the greater amount of claimed force was used, similar to the district court's determination in <u>Flanigan</u>, the injuries that Plaintiff allegedly suffered were not so severe as to suggest the use of excessive force. Rather, as in <u>Durruthy</u>, the injuries were <u>de minimus</u> and not constitutionally prohibited given the circumstances of the case.

Officer Pierre did not use or threaten Plaintiff with a weapon, beat Plaintiff (even assuming for now that a "kick" was involved), refuse Plaintiff medical attention, or otherwise use such force as to rise to the level of a constitutional violation. <u>See</u> <u>Graham</u>, 490 U.S. at 389-90 (refusing the plaintiff's pleas for sugar for his diabetes as he lost consciousness, slamming him headfirst against the police car, and sustaining injuries of "a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder" could have risen to the level of unreasonable, excessive force under the Fourth Amendment); <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 652-53 (9th Cir. 2001) (finding no constitutional

-14-

violation based on excessive force in the arrest where the plaintiff had asserted that she was sprayed with a chemical irritant, handcuffed and roughly pulled to her feet, and turned up the engine in the car, while rolling up the windows, to force her to suffer in the July heat); Gregory, 414 F. Supp. 2d at 968 (determining that the force used was not unconstitutionally excessive, even though the plaintiff died of a heart attack as a result, where the plaintiff was trespassing and acting aggressively, refusing to obey requests and commands to leave, there was no evidence that the plaintiff was choked or that the officers acted unreasonably with the use of a handgun or pepper spray to disarm the plaintiff of his "pen," and an officer told the plaintiff "if [he] could talk, [he] could breathe").  If proven, the Court, of course, would not condone Officer Pierre's acts or use of force, but it also recognizes that "[t]he calculus of reasonableness must allow for the fact that police officers are often forced to make split-second judgments[.]"  Kanae, 294 F. Supp. 2d at 1184. Given the facts and circumstances of this case, Plaintiff has failed to demonstrate facts that, if proven, would establish an essential element at trial on Count 1 with respect to Officer Pierre.  The Court, therefore, GRANTS summary judgment for Officer Pierre on Count 1.

　　　　As to Count 2 with respect to Officer Pierre, Plaintiff has failed to cite any conduct that would create genuine issues of material fact for trial concerning

Plaintiff's claim of malicious and false detention and confinement.  The Court, therefore, GRANTS summary judgment for Officer Pierre on Count 2.

### 2. Count 3– Strip Search

As to Count 3, Plaintiff claims that Officer Pierre and an officer not named as a party, Officer Okada, caused Plaintiff to be subjected to a strip search at the detention center.  City Defendants do not address this matter, other than to note that they cannot be held liable for the strip search and that Officer Pierre was not involved in the strip search.  Officer Pierre attests that he had no involvement with Plaintiff after Plaintiff was released to the officers at the Central Receiving Division ("CRD"), which is the detention center located at 801 South Beretania Street where the strip search was alleged to have occurred.  (Pierre's Decl. ¶ 11; Complaint ¶ 38.)

City Defendants cannot be held liable for the strip search, per se, unless an official custom or policy is involved under Monell, 436 U.S. at 690-91, (or a failure to train is involved as alleged under Count 5).  The Court, therefore, GRANTS summary judgment for the City Defendants on Count 3.

Additionally, from Plaintiff's allegations, an officer named "Okada" may have been the officer personally responsible for or involved in the strip search, although that is unclear from Plaintiff's pleadings.  Nonetheless, Officer Okada is

not a named party to whom Plaintiff seeks to attach liability.  Plaintiff presents no

evidence that Officer Pierre was personally involved in the strip search and Officer

Pierre denies any involvement with Plaintiff after he was released to the officers at

CRD.  Consequently, because there are no genuine issues of material fact

concerning Officer Pierre's direct involvement in the strip search, the Court

GRANTS summary judgment for Officer Pierre on Count 3.

### 3.  Count 4—Conspiracy

As to Count 4, Plaintiff fails to cite any conduct by City Defendants or

Officer Pierre that would create genuine issues of material fact concerning his

conspiracy allegations, which, if proven, would establish essential elements at trial.

### 4.  Count 5—Refusing or Neglecting to Present (or "Failure to Train")

As to Count 5, to the best of the Court's understanding, Plaintiff

alleges improper training and supervision by City Defendants and Officer Pierre.

Under certain circumstances, a failure to train may create municipal liability.  See

City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989).  A failure to train can

provide a basis for municipal liability "only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the [officials] come in

contact."  Id. at 388-89.  The question is twofold: (1) whether the training program,

if one in fact existed, is adequate; and if not, (2) "whether such inadequate training

can justifiably be said to represent 'city policy.'" Id. at 390.

Here, City Defendants have not addressed Plaintiff's strip search claim.  Based on the evidence presented, the Court, at this time, cannot determine whether City Defendants had a policy or a training program in place that was adequate, and, if not, whether that inadequate training justifiably could be said to represent City policy.   If that could be said, then the Court could find that City Defendants were deliberately indifferent to Plaintiff's rights.  Thus, there are genuine issues of material fact concerning the existence and adequacy of training regarding strip searches and whether that training or lack thereof is official City policy within the meaning of Monell. 436 U.S. at 694-95.  The Court, therefore, DENIES summary judgment as to City Defendants on Count 5.

As to Officer Pierre, the Court GRANTS summary judgment because he is not liable for this claim as an employee of City Defendants.

Finally, Plaintiff adds a claim for improper use of force under Section 1983 in his response to City Defendants' motion for summary judgment. Generally, a plaintiff may not raise additional claims in his response to a motion for summary judgment.  See Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).  Here, Plaintiff not only failed to raise a Section 1983 claim for improper use of force in

his amended complaint, but he never sought to amend his complaint to include this allegation, even though he was well aware of the procedures in place to amend a complaint.[3]  See Brownlee v. Burleson, No. CIV S-04-1330, 2006 WL 2354888, at *4 n.2 (E.D. Cal. Aug. 15, 2006) (declining to address additional claims brought by a pro se prisoner in his response to defendant's  motion for summary judgment because they were not alleged in the prisoner's complaint, nor did the prisoner seek leave to amend his complaint).  Similar to the plaintiff in Brownlee, Plaintiff only now raises additional claims regarding resultant injuries from Officer Pierre's arrest.  See id. (noting that the plaintiff raised additional claims regarding the treatment for his back after his surgery in his opposition only).  Namely, Plaintiff now alleges that Officer Pierre's use of unreasonable force during the arrest resulted in his permanent back injuries and a crushed middle finger and that that use forms a separate claim of "improper use of force" under Section 1983. (Annan-Yartey Aff. ¶ 15). Hospital records indicate that Plaintiff suffered from a

---

[3]        On January 3, 2007 and January 10, 2007, Plaintiff filed a Motion for Leave to Amend Complaint and an Amended Motion, respectively.  Plaintiff sought to make clerical corrections through the amendment, not to change, add, or modify the substance of his pleadings.  Consequently, on February 2, 2007, Magistrate Judge Barry M. Kurren ("Magistrate Judge") permitted a stipulation to clarify and to identify the parties properly without permitting an amendment.  On February 5, 2007, the Magistrate Judge entered an Order Denying Plaintiff's Motion for Leave to File Amended Complaint.  No further motions were made to amend the Complaint.

crushed middle finger and back pain after the incident.  (<u>Pl's Ex.</u> F.)  Although the extent of the back "pain" is unknown, Plaintiff at no time prior to these motions alleged "permanent" back injuries.  Additionally, Plaintiff's arguments on this point mirror many of those made in support of his arrest charge, among others.  For the foregoing reasons, the Court declines to address Plaintiff's additional claim for improper use of force under Section 1983.

        B.     <u>Counts 6-13: State Law Claims</u>

                1. <u>Count 6–Malicious Prosecution</u>

Plaintiff argues that City Defendants and Officer Pierre initiated criminal proceedings against him with malice by arresting him without probable cause and without determining whether Nomura's TRO had been served on Plaintiff.  A malicious prosecution claim requires proof that (1) the prior proceeding was terminated in the plaintiff's favor, (2) the prior proceedings were initiated without probable cause, and (3) the prior proceedings were initiated with malice.  <u>Myers v. Cohen</u>, 688 P.2d 1145, 1148 (Haw. 1984).  The plaintiff must prove all three elements to succeed.

In the instant case, all charges against Plaintiff were ultimately dismissed, meeting the first prong of the malicious prosecution test.  Turning to the second prong, the Court determines that City Defendants and Officer Pierre had

probable cause to initiate proceedings against Plaintiff based on his history of

trespass warnings as documented by Safeguard's reports.  (Def's Ex. 2.)

Moreover, Plaintiff may have believed that he had a legitimate purpose for entering

the premises, but his refusal to leave the premises even after he served the papers

on Nomura further strengthens City Defendants' argument that Officer Pierre had

probable cause to initiate arrest for criminal trespass.  Accordingly, because the

negation of one prong of the malicious prosecution test is enough to defeat the

claim, the Court GRANTS summary judgment as to Count 6.

### 2. Count 7–Abuse of Process

Plaintiff alleges that City Defendants and Pierre are liable for

malicious abuse of legal process.  Hawaii state courts require proof of two

elements for abuse of process claims: "(1) an ulterior purpose and (2) a wilful act

in the use of the process which is not proper in the regular conduct of the

proceeding."  Chung v. McCabe Hamilton & Renny Co., 128 P.3d 833, 842 (Haw.

2006) (citing Wong v. Panis,, 772 P.2d 695, 699-700 (1989)).  Having determined

that no genuine issues of material fact exist surrounding the unreasonableness of

Officer Pierre's acts in securing Plaintiff's arrest and detention, the only possible

abuse of process claim may be for subjecting Plaintiff to a strip search without

cause.  The unfounded bodily search may qualify as a "wilful" act that is "not

proper in the conduct of the proceeding," therefore meeting the second prong of the

abuse of process test and creating a genuine issue of material fact concerning the

intent and propriety of the strip search.

Notwithstanding, Plaintiff has failed to allege material issues of fact

that, if proven, would establish the first prong.  Although Plaintiff alleges that

Pierre acted for "personal financial benefit," the Court fails to see how a strip

search would benefit the acting officer financially.  As Plaintiff fails to allege an

ulterior purpose specific to the allegedly unreasonable strip search, his factual

allegations concerning this claim would not, if proven, satisfy the first element of

the test. Accordingly, the Court GRANTS summary judgment for City Defendants

and Officer Pierre as to Count 7.

3.   Count 8–Violation of Hawaii Civil Rights Act

Plaintiff alleges violation of his rights under the "Hawaii Civil Rights

Act."  As noted in previous orders, no Act of that name exists and, as such, the

Court cannot determine what statutory rights he alleges were violated.  Therefore,

the Court GRANTS summary judgment for City Defendants and Officer Pierre as

to Count 8.

4.  Count 9–False Arrest and Imprisonment

Count 9 is duplicative of Counts 1 and 2, which allege violations of Plaintiff's constitutional rights under Section 1983 for unlawful arrest and detention.  As summary judgment was granted for the above Counts, the Court, too, GRANTS summary judgment for City Defendants and Officer Pierre as to Count 9.

5.  Counts 10 and 11–Assault and Battery

For nonjudicial officers to be liable for state law tort claims, the plaintiff must prove malice by clear and convincing evidence. See Towse v. State, 647 P.2d 696, 702 (Haw. 1982); Medieros v. Kondo, 522 P.2d 1269, 1271-72 (Haw. 1974).  "[W]here malice is alleged to extinguish a qualified privilege, 'defendant is required to act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information.'"  Towse, 647 P.2d at 703 (quoting Russell v. Am. Guild of Variety Artists, 497 P.2d 40, 45 n.4 (Haw. 1972)). Although the existence of malice generally is a question for the jury, summary judgment is proper where the "record d[oes] not reflect any suggestion that defendants ha[ve] acted maliciously or for an improper purpose."  Id.; see also

-23-

Reed v. City and County of Honolulu, 873 P.2d 98, 109 (Haw. 1994) (finding that the record did not support that the prosecutor acted with malice).

A municipality, that is, City Defendants, are "subject to the state's tort laws in the same manner as any other private tortfeasor may be liable for state law torts that its agents committed." Kahale v. City and County of Honolulu, 90 P.3d 233, 241 (Haw. 2004); see also Lauer v. Young Men's Christian Ass'n of Honolulu, 557 P.2d 1334, 1341 (Haw. 1976) (holding that a municipality may be liable "on the same principles which impose liability on a non-municipal principal for the tortious conduct of its agents"). In line with the "malice" requirement for nonjudicial officers, the State of Hawaii recognizes a respondeat superior theory for acts of agents of a municipality in regard to torts that an employee "maliciously" commits within the scope of his authority. See Lane v. Yamamoto, 628 P.2d 634, 636 (Haw. Ct. App. 1981); Orso v. City and County of Honolulu, 534 P.2d 489 (Haw. 1975), overruled by, Kahale, 90 P.3d at 239 (overruling Orso on statute of limitations grounds, which statute at issue, Hawaii Revised Statute § 46-72, since has been amended to create a 2-year statute of limitations period, 2007 Hawaii Laws Act 152 (S.B. 1603)). A municipality cannot be held liable, however, for punitive damages. See id. at 1342.

-24-

Here, Plaintiff alleged that Officer Pierre, Officer Okada, and HPD are liable for assault because they "intentionally created an apprehension of immediate physical harm by means of an overt gesture, to wit, pushing [Plaintiff] in his cell at the police station" to "awaken" him and to "startle" him for "no purpose other than to create an apprehension of immediate physical harm." (<u>Complaint</u> ¶¶ 70-71.) Plaintiff further argues that Officer Pierre and HPD are liable for battery because Officer Pierre "intentionally, harmfully, and offensively touched [Plaintiff] by handcuffing him," "shackling [him] in the police station," and "strip-searching" him. (<u>Id.</u> ¶¶ 71-73.)   Plaintiff alleges that City Defendants are liable under the doctrine of respondeat superior for assault and battery. (<u>Complaint</u> ¶¶ 72, 74.)

Plaintiff did not allege malice for either claim, and Plaintiff has failed to allege any facts that would demonstrate assault and/or battery, except for the strip-search alleged under battery. <u>See</u> <u>generally</u> <u>Leong Sam v. Keli'iho'omalu</u>, 24 Haw. 477 (1918) (noting that "[a] peace officer is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order or to overcome resistance to his authority; but is liable if unnecessary violence is used to accomplish the purpose or if he assaults a person without just excuse.")  Setting aside the strip search for now and assuming that Plaintiff's allegations are true, pushing Plaintiff into his cell at the police station to awaken

and to startle him and handcuffing him in an "intentional" and "harmful" way would not legally rise to the level of assault and/or battery.  Those allegations do not reflect any suggestion that Officer Pierre and/or the City Defendants have acted maliciously or for an improper purpose.  The Court, therefore, GRANTS summary judgment for Officer Pierre on Counts 10 and 11 for assault and battery claims and GRANTS summary judgment for City Defendants on Count 10 for assault.

        The only allegation that causes the Court to pause is the strip search claim.  Although Plaintiff did not allege malice in his Complaint, a strip search, including a search of Plaintiff's bodily cavities, conducted for a trespass violation may indicate malice, if not conducted for some other reasonable, articulable purpose.  See State v. Bayaoa, 656 P.2d 1330, 1334 (Haw. 1982) (finding that an officer must have a "reasonable basis" to conduct a strip search in a non-emergency situation involving prison inmates); State v. Merjil, 655 P.2d 864, 867 (Haw. 1982) (looking to the "reasonableness" of a body cavity search); State v. Kaluna, 520 P.2d 51, 58-60 (Haw. 1974) (requiring "reasonable and articulable grounds" to justify a warrantless strip search of the defendant).  At this stage, the Court cannot determine whether agents of City Defendants acted with malice in conducting the strip search.  In fact, the Court is unclear who actually conducted the strip search.  Nonetheless, the fact that the agent who conducted the strip search

is unnamed does not create a safe haven for City Defendants.  A complaint need not include claims against a party individually for respondeat superior/vicarious liability to apply.  See Yamane v. Pohlson, 137 P.3d 980, 990 (Haw. 2006).  In other words, "[t]he employee is not a necessary party to a suit against his employer under respondeat superior."  Id. (citation and internal quotation marks omitted)).  If Plaintiff can prove malice on the part of the tortious officer who conducted the strip search, whether that officer is Officer Okada (the officer mentioned in the Complaint though not named as a party) or another officer, City Defendants may be held liable for the state tort of battery.   Thus, there are genuine issues of material fact concerning the existence of malice in regard to the strip search that precludes summary judgment.  Accordingly, the Court DENIES summary judgment as to City Defendants on Count 11 for battery concerning the strip search.

### 6.  Count 12–Conspiracy

Count 12 alleges that City Defendants and Officer Pierre conspired with co-defendants to carry out Plaintiff's arrest based upon false information that Nomura provided.  City Defendants and Officer Pierre argue that Plaintiff has no evidence of their participation in a conspiracy.  A civil conspiracy claim must be based on an underlying actionable claim and cannot be based on allegations of a

conspiracy alone.  See Weinberg v. Mauch, 890 P.2d 277, 286 (Haw. 1995) (citing

Ellis v. Crockett, 451 P.2d 814, 822-23 (Haw. 1969)).  As Plaintiff failed to allege

facts that would support his malicious prosecution and malicious abuse of process

claims, there is no underlying actionable claim on which to form the foundation of

a civil conspiracy.  Accordingly, the Court GRANTS summary judgment for City

Defendants and Officer Pierre as to Count 12.

### 7.   Count 13–Intentional Infliction of Emotional Distress

Plaintiff alleges that City Defendants and Officer Pierre intentionally

inflicted emotional distress through malicious prosecution, abuse of process, false

arrest and imprisonment, conspiracy, and violation of his constitutional and state

civil rights.  Under Hawaii law, an IIED claim requires proof of four elements: "(1)

that the act allegedly causing the harm was intentional or reckless, (2) that the act

was outrageous, (3) that the act caused (4) extreme emotional distress to another."

Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (Quoting Hac v.

Univ. of Haw., 73 P.3d46, 60-61 (Haw. 2003)).  Hawaii state courts have defined

"outrageous" as conduct "without just cause or excuse and beyond all bounds of

decency" and "extreme emotional distress" as mental suffering, mental anguish,

nervous shock, and other "highly unpleasant mental reactions."  Enoka, 128 P.3d at

872.  City Defendants contend that Officer Pierre's conduct does not meet the "outrageous" standard and, therefore, Plaintiff's IIED claim lacks merit.

The Court agrees that Officer Pierre's conduct does not meet the IIED standard.  The same cannot be said for City Defendants because of the factual allegation involving the existence of a strip search.  The parties do not dispute that an officer at the station performed a strip search that City Defendants have failed to justify.  An invasive bodily search performed without a "reasonable, articulable basis" may satisfy all four prongs of the test.  Therefore, if a reasonable, articulable basis did not exist to perform the strip search, a fact finder could find that the existence of the strip search, if conducted with malice under Hawaii law, caused Plaintiff extreme emotional distress.  Accordingly, the Court DENIES summary judgment for City Defendants as to Count 13.

II.   Cades and Nomura's Motion for Summary Judgment

Cades and Nomura move for summary judgment as to the remaining claims against them on the basis that Plaintiff has no actionable claim for malicious prosecution or conspiracy and that there is no basis for the IIED claim.  The Court agrees.  As the malicious prosecution and the conspiracy claims against Cades and Nomura rely on the same factual foundation as that for the City Defendants,

Officer Pierre, and even Safeguard,[4] the Court GRANTS summary judgment for

the same reasons on Counts 6 and 12 as to Cades and Nomura.  Likewise, because

Cades and Nomura were not involved in the strip search, which is the only legally

viable basis for Plaintiff's IIED claim, the Court, too, GRANTS summary

judgment on Count 13 for Cades and Nomura.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND

DENIES IN PART City Defendants and Officer Pierre's Motion for Summary

Judgment.  Specifically, the Court GRANTS City Defendants' motion for

summary judgment as to Counts 1, 2, 3, 4, 6, 7, 8, 9, 10, and 12; GRANTS Pierre's

motion for summary judgment as to all counts; and DENIES City Defendants'

motion for summary judgment as to Count 5 for improper training and supervision

concerning the strip search, Count 11 for battery concerning the strip search, and

Count 13 for IIED in relation to the strip search.

---

[4]   On June 19, 2007, the Court granted summary judgment for Defendant Safeguard on all claims, including the malicious prosecution claim. (Docket No. 155; June 19, 2007 Order at 9-12.)

-30-

The Court GRANTS Cades and Nomura's Motion for Summary

Judgment on Counts 6, 12, and 13.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 31, 2007.


_____
David Alan Ezra
United States District Judge



Napoleon T. Annan-Yartey vs. Honolulu Police Department, et al., Civil No. 06-
00166 DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS CITY AND COUNTY OF HONOLULU, HONOLULU POLICE
DEPARTMENT, CHIEF OF POLICE BOISSE P. CORREA AND OFFICER
SHAWN PIERRE'S MOTION FOR SUMMARY JUDGMENT; AND
GRANTING DEFENDANTS CADES SCHUTTE LLP AND ERNEST H.
NOMURA'S MOTION FOR SUMMARY JUDGMENT